**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | | |
|---|---|---|
| WHITESELL INTERNATIONAL CORPORATION, d/b/a PROFILE STEEL AND WIRE,<br><br>    Plaintiff,<br><br>vs.<br><br>AMTEK AUTO LIMITED<br><br>Defendant. | | No. 4:13-cv-00056-JAJ<br><br><br>**ORDER** |

   This matter comes before the Court on Defendant Amtek Auto Ltd.'s Motion to Dismiss pursuant to the Federal Rules of Civil Procedure 8, 12(b)(2), and 12(b)(6) filed on September 9, 2013. [Dkt. No. 8]. Plaintiff filed a resistance to the Motion to Dismiss on September 26, 2013. [Dkt. No. 13]. Defendant filed a reply on October 7, 2013. [Dkt. No. 14]. Plaintiff filed a sur-reply to the Motion to Dismiss on October 9, 2013, requesting leave to conduct jurisdictional discovery. [Dkt. No. 15]. Defendant responded to the request on October 17, 2013. [Dkt. No. 18]. The Defendant's Motion to Dismiss is **GRANTED**.

## I. INTRODUCTION

   This dispute arises from a contract for the sale of customized rolled-steel products. The Plaintiff produced specialized steel products and delivered them to Midwest Manufacturing Co. ("Midwest"). Midwest failed to pay the Plaintiff for these products. Midwest is a wholly owned subsidiary of the Defendant, Amtek Auto Ltd. ("Amtek"), which is a foreign corporation. Plaintiff brings suit against the Defendant for breach of contract, tortious interference with contractual relations, aiding and abetting a conspiracy, and unjust enrichment.

   Defendant moves to dismiss claiming that the Court lacks jurisdiction over Amtek, a foreign-owned-and-operated corporation with no substantial contacts or any business in the state of Iowa. Additionally, Amtek moves to dismiss the Plaintiff's claims on the grounds that they fail to meet the pleading requirements of FRCP 8(a). The issue of personal jurisdiction is dispositive; thus, the Court does not address the FRCP 8(a) claim.

1

## II. Factual Background

Plaintiff, Whitesell International Corporation ("Whitesell"), is a corporation incorporated and principally operated in Alabama. [Dkt. No. 1 ¶ 1]. Defendant, Amtek, is a foreign corporation with headquarters in New Delhi, India. Amtek is publically traded on the Bombay Stock Exchange. Amtek is the parent corporation of Midwest, a company whose principle place of business is located in Jasper County, Iowa. Midwest is a wholly owned subsidiary of Amtek. *Id.*

In 2008, Whitesell submitted a supply-agreement proposal to Midwest for specialized rolled-steel products. [Dkt. No. 1 at ¶ 2]. The products Whitesell agreed to produce for Midwest were customized and were to be delivered to Midwest's plant located in Iowa.

The parties dispute whether the sales proposal was negotiated solely between Whitesell and Midwest or if it was negotiated between Whitesell and both Midwest and Amtek. Whitesell negotiated this sales agreement with David Townsend, an employee of Midwest. David Townsend's email address at the time of these negotiations was "david.townsend@amtek.com." Whitesell's Chief Operating Officer's affidavit—attached to the pleadings—stated that, "Whitesell understood that Mr. Townsend was an employee of Amtek." [Dkt. No. 13-2 at ¶ 2]. The only basis upon which Whitesell formed this belief was Townsend's email address. In response, Amtek submits an affidavit stating that Townsend was never employed by Amtek— rather; he was employed by Amtek's subsidiary.

Whitesell also claims that it believed it was contracting with Amtek because the terms of the sales proposal refer to the purchaser in one section as "Amtek Industries, Ltd. (Midwest)." Defendant contends that the "Amtek" referenced in the proposal is not Amtek the parent company but is rather its subsidiary, Midwest. Whitesell asserts that the proposal referred to the Defendant, the international parent corporation of Midwest.

Whitesell submits emails between individuals with "amtek.com" email addresses that discuss the contract between the Plaintiff and Midwest. Plaintiff claims these emails are evidence that Amtek employees were involved in the formation and subsequent breach of the contract. Defendant counters that the employees exchanging these emails did not work for Amtek, but were instead employed by other, subsidiary corporations. Amtek notes that "amtek.com" is an email domain shared by many employees of Amtek subsidiaries, and simply having such an

2

address does not indicate that an individual was employed by the parent company, Amtek. [Dkt. No. 14-1 at ¶ 3].

The parties agree that Whitesell manufactured the custom steel products for Midwest. In October of 2008, Whitesell shipped the products to Midwest in Iowa. Midwest failed to pay the $136,664.95 due for the products shipped. Whitesell further alleges that Midwest owes an additional $932,092.73 for steel products ordered by, but never delivered to Midwest.

To recover these amounts, Whitesell initiated a suit in federal court against Midwest for the amount of $1,068.787.69. *Whitesell Int'l Corp. v. Smith Jones, Inc. d/b/a Midwest Manufacturing Co.*, 827 F. Supp. 2d 964 (S.D. Iowa 2011). The district court granted default judgment against Midwest. *Id*. Shortly, after that suit commenced Midwest filed a Chapter 11 bankruptcy petition in Minnesota. *In re: Smith Jones, Inc.*, Ch. 11 No. 11-45961-NCD (Bankr. Minn. September 9, 2011). Whitesell is listed as an unsecured creditor in that proceeding.

Whitesell claims that Amtek directed Midwest to breach its contract with Whitesell. Plaintiff also claims that Amtek comingled funds with Midwest and exercised substantial control over the subsidiary. Whitesell does not point to any specific facts, affidavits, or exhibits contained in the pleadings to support these claims.  Attached to the pleadings on this motion, Amtek included an affidavit from its associate vice president, Sanjay Tiku, stating that Amtek neither entered into a business relationship with the Plaintiff, nor did it direct its subsidiary Midwest to enter into a business relationship with the Plaintiff. [Dkt. No. 14 at ¶ 1]. He further stated that Amtek does not and did not during the relevant time period solicit, conduct, or transact any business in the state of Iowa.

III. STANDARD OF REVIEW

In order to survive a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the complaint must, at a minimum, state facts sufficient to "support a reasonable inference" that Amtek "may be subjected to jurisdiction" in Iowa. *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008). Because Amtek denies that personal jurisdiction exists in this case, Whitesell has the burden of proving facts that support a finding of personal jurisdiction. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) "The plaintiff's showing 'must be tested, not by the pleadings alone, but by the affidavits and exhibits

presented with the motions and in opposition thereto." *Dever*, 380 F.3d at 1072 (citing *Block Indus. v. DHJ Indus.*, 495 F.2d 256, 260 (8th Cir. 1974)).

If the district court does not conduct a hearing, then it must consider the facts in the light most favorable to the non-moving party and resolve all conflicts in favor of that party. *Romak USA, Inc. v. Rich*, 384 F.3d 979, 983–84 (8th Cir. 2004); *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998); *Digi-Tel Holdings v. Proteq Telecomm., Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). Thus, Whitesell may defeat the motion to dismiss for lack of personal jurisdiction by making a prima facie showing of jurisdiction, and may do so with exhibits, affidavits, or other evidence. *Watlow Elec. Mfg. Co. v. Patch Rubber Co.*, 838 F.2d 999, 1000 (8th Cir. 1988); *Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 311 (8th Cir. 1982).

This Court may "assume jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution." *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994); *Minnesota Mining and Manuf. Co. v. Nippon Carbide*, 63 F.3d 694, 696–97 (8th Cir. 1995). Iowa has a very broad long-arm statute,[2] and expands its "jurisdictional reach to the widest due process parameters" that the Constitution allows. *Hammond v. Fl. Asset Financing Corp.*, 695 N.W.2d 1, 5 (Iowa 2005) (discussing Iowa R. Civ. P. 1.306). Accordingly, this Court's analysis need only

---

[2] Iowa's long-arm statute can be found in both Iowa Code § 617.3 and Iowa Rule of Civil Procedure 1.306. Section 617.3 provides:

> [i]f a foreign corporation makes a contract with a resident of Iowa to be performed in whole or in part by either party in Iowa, or if such foreign corporation commits a tort in whole or in part in Iowa against a resident of Iowa, such acts shall be deemed to be doing business in Iowa by such foreign corporation under this section."

Iowa Code § 617.3 (2006). Iowa R. Civ. P. 1.306 provides that:

> Every corporation, individual, personal representative, partnership or association that shall have the necessary minimum contact[s] with the state of Iowa shall be subject to the jurisdiction of the courts of this state, and the court of this state shall hold such corporation, individual personal representative, partnership or association amenable to suit in Iowa in every case not contrary to the provisions of the Constitution of the United States.

Iowa R. Civ. P. 1.306. Rule 1.306, "unlike Iowa's older 'long-arm' statute, section 617.3 . . . expands Iowa's jurisdictional reach to the widest due process parameters of the federal constitution." *Larsen v. Scholl*, 296 N.W.2d 785, 788 (Iowa 1980).

resolve the issue of whether exercising personal jurisdiction over the nonresident Amtek "is consistent with principles of due process." *Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 499–500 (S.D. Iowa 2007); *see Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir. 1994) (holding that, when a long-arm statute is broadly construed, "the inquiry collapses into the single question of whether exercise of personal jurisdiction comports with due process").

The Due Process Clause mandates that there be certain "minimum contacts" between the forum state and nonresident defendant "before the court may exercise jurisdiction over the defendant." *Coen v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). "Random, fortuitous, or attenuated contacts" are insufficient to hale a defendant into the courts of the forum state. *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 693–94 (8th Cir. 2003) (citations omitted). The Eighth Circuit Court of Appeals has found that minimum contacts are present when a defendant's connections with the forum state "[are] such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Coen*, 509 F.3d at 905. Reasonable anticipation is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law." *Id.* (internal quotations omitted).

Minimum contacts must be present "either at the time the cause of action arose, the time the suit was filed, or within a reasonable period of time immediately prior to the filing of the lawsuit." *Johnson*, 444 F.3d at 955–56 (internal quotations omitted). If it appears that a defendant has minimum contacts with a forum state, then a court may consider the contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 320 (1945)).

The Eighth Circuit employs a five-part test for measuring minimum contacts with the forum state, examining: (1) "the nature and quality of the contacts"; (2) the number of these contacts; (3) how the cause of action is related to the contacts; (4) the forum state's interest in "providing a forum for its residents"; and (5) party convenience. *Coen*, 509 F.3d at 905 (quoting *Bell Paper Box, Inc.*, 22 F.3d at 819); *see Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir. 2006); *Epps v. Stewart Info. Serv. Corp.*, 327 F.3d 642, 648 (8th Cir. 2003); *Porter v. Berall*, 293

5

F.3d 1073, 1075 (8th Cir. 2002). When applying this test, "the first three factors are of primary importance." *Bell*, 22 F.3d at 819.

IV. ANALYSIS

*A. PERSONAL JURISDICTION*

Whitesell is required to assert sufficient facts that would support a reasonable inference that Amtek is subject to personal jurisdiction consistent with due process requirements. *Steibuch*, 518 F.3d at 585; *Coen*, 509 F.3d at 509. The Court evaluates this argument using the five-factor test that has been routinely applied by the Eighth Circuit.

1. THE NATURE AND QUALITY OF DEFENDANT AMTEK'S CONTACTS WITH IOWA

The Court first examines the nature and quality of Amtek's contacts with the forum state. The Court determines that the nature and quality of Amtek's contacts with Iowa weigh against exercising jurisdiction over the foreign corporation.

Whitesell alleges that Amtek "was directly involved in the supply agreement proposal for the specialized rolled steel products." [Dkt. No. 13-1 ¶ 10]. The Plaintiff argues that it sent the proposal to an Amtek employee, David Townsend. Additionally, Whitesell attaches exhibits of emails sent between individuals with "amtek.com" email addresses to its pleadings and alleges that these emails illustrate contact between Amtek and the state of Iowa.

In response, Amtek submitted an affidavit from one of its executives, which contends that none of the individuals referenced in the Plaintiff's email exhibits are employed by the Defendant. [Dkt. No. 14 ¶ 3]. The affidavit states that Amtek neither entered into a business relationship with Whitesell nor did it direct its subsidiary Midwest to enter into a business relationship with the Plaintiff. [Dkt. No. 14 at ¶ 1]. The affidavit further asserts that Amtek does not solicit, conduct, or transact any business in the state of Iowa. Plaintiff's unilateral belief, formed solely as a result of an email address, does not provide a basis for the assertion of personal jurisdiction or call for jurisdictional discovery.

Whitesell does not include any exhibits, specific allegations, or affidavits to support its contention that the employees referenced in the emails are employed by Amtek. When a defendant contests the allegations contained within a complaint, a plaintiff must produce more than conclusory allegations to satisfy their burden and establish a prima facie case for jurisdiction. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1074 (8th Cir. 2004).

6

Moreover, even if the Court were convinced the emails suggest that Amtek was involved in the negotiation of the contract, they would still not support an exercise of personal jurisdiction. *Sybraritic Inc. v. Interport Int'l Inc.*, 957 F.2d 522, 525 (8th Cir. 1992) (holding that a foreign corporation's contract with a forum's resident did not support an exercise of personal jurisdiction when it was "negotiated, drafted, presented and executed" outside of the forum). Additionally, while the Plaintiff fails to rebut Amtek's affidavit stating that none of these emails were sent by Amtek employees, the Court notes that, even if it had found that these emails were sent by Amtek employees, this too would not create contact sufficient to justify the exercise of personal jurisdiction. To support the exercise of jurisdiction over a foreign entity, that entity's contacts with the forum state must be more than just phone calls and written correspondence. *Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.*, 558 F.2d 450, 455 (8th Cir. 1977). Contacts such as "scattered e-mails, phone calls, and a wire-transfer of money" to a forum state are insufficient contacts to support jurisdiction. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011).

Whitesell has failed to produce more than conclusory allegations that Amtek had any contact with or connection to Midwest sufficient to support an exercise of personal jurisdiction. As a result, this factor weighs in Amtek's favor and supports a denial of personal jurisdiction in this case.

## 2. THE QUANTITY OF AMTEK'S CONTACT WITH IOWA

The Court next examines the quantity of contacts with the forum state. Physical presence is not a requirement of personal jurisdiction because "a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King Corp.*, 504 U.S. at 476. A single act can support jurisdiction, so long as it creates a substantial connection with the forum. *Id.* at n.18. When—as in this case—specific jurisdiction is being alleged, the quantity of contacts is not determinative and it is more important to consider the nature and quality of the contacts and evaluate the relationship of those contacts to the cause of action. *See Lakin v. Prudential Secs., Inc.*, 348 F.3d 704, 711 n.10 (8th Cir. 2003).

Amtek is organized and operates in New Delhi, India. [Dkt. No. 8-1 ¶ 9]. Amtek does not conduct or transact any business in Iowa, does not have bank accounts or tangible property in

Iowa, and does not solicit any business in the state of Iowa. *Id.* Amtek does not maintain any offices, employees, addresses, or telephone numbers in Iowa. *Id.* Amtek has never been assessed any taxes by the state of Iowa, has not advertised, engaged in any marketing, or sold or distributed any of its products in Iowa. In this case, Whitesell has provided no specific allegations, affidavits, or exhibits that demonstrate that Amtek had any contact with the state of Iowa. Thus, this factor also weighs against exercising personal jurisdiction over Amtek.

### 3. THE RELATION OF THE CAUSE OF ACTION TO AMTEK'S CONTACTS

The Court next turns to the third factor of the test, which examines the degree to which the cause of action relates to Amtek's contacts with the forum state. The third factor distinguishes general jurisdiction from specific jurisdiction. *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996). Courts can exercise general jurisdiction when an entity has continuous and systematic contacts with a forum state; these contacts must be of such a nature that any cause of action may be adjudicated in the forum. *Wessels, Arnold & Henderson v. Nat'l Medical Waste, Inc.*, 65 F.3d 1427, 1432 n.4 (8th Cir. 1995). Specific jurisdiction is present "if the defendant has purposely directed its activities at forum residents, and the litigation results from injuries arising out of, or relating to, those activities." *Id.*; *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090–91 (8th Cir. 2008).

Whitesell fails to articulate a prima facie case for general jurisdiction. Courts are permitted to exercise general jurisdiction over foreign corporations "to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. ___ (2011) (slip op. at 10) (131 S. Ct. 2846 (2011)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Daimler AG v. Bauman*, 571 U.S. — (2014) (slip op. at 18) (134 S. Ct. 746, 754 (2014)) (citations omitted). The Supreme Court has rejected the notion that foreign corporations are subject to general jurisdiction merely through whole ownership of subsidiary in a forum state, even when the parent corporation exercises substantial control over the subsidiary. *Daimler*, 571 U.S., at __ (slip op. 17) (citations omitted). Whitesell has asserted no facts that suggest Amtek had any continuous or systematic affiliations with Iowa beyond merely owning a subsidiary in the State.

8

Accordingly, the Court finds that Whitesell fails to articulate a prima facie showing of general jurisdiction over Amtek.

Plaintiff has also failed to articulate a prima facie case for exercising specific jurisdiction over Amtek. Whitesell's complaint alleges that Amtek has breached its contract, engaged in tortious interference, and aided and abetted a conspiracy. Whitesell has failed to provide the Court with any specific allegations, exhibits, or affidavits that demonstrate Amtek was a party to the contract between Whitesell and Midwest.

The pleadings are similarly devoid of specific allegations, exhibits, or affidavits that suggest that Amtek engaged in any type of conspiracy with Midwest. Additionally, this Court has previously held that "a nonresident's alleged participation in a conspiracy 'cannot serve as an independent basis for the exercise of in personam jurisdiction over the nonresident Defendants in a case that would otherwise fail the 'minimum contacts' approach.''' *Westlake Investments, L.L.C., v. MLP Management L.L.C.*, 707 F. Supp. 2d 904, 910 (S.D. Iowa 2010) (citing *Brown*, 504 F. Supp. 2d at 518). The Plaintiff has failed to meet its prima facie standard of showing that the Defendant "purposely directed its activities to the forum state and the claim arose out of or relates to those activities." *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008) (citations omitted). As a result, Whitesell has failed to establish a prima facie case for specific jurisdiction.

Whitesell fails to articulate specific allegations that suggest a link between Amtek and any of the causes of action it asserts. This factor suggests that the Court cannot exercise personal jurisdiction over Amtek.

### 4. THE INTEREST OF IOWA IN PROVIDING A FORUM FOR ITS RESIDENTS

Iowa generally has an interest in adjudicating claims and providing a forum for its residents. *See Aylward v. Fleet Bank*, 122 F.3d 616, 618 (8th Cir. 1997) (summarily concluding that this portion of the test weighed in favor of jurisdiction by assuming the forum state has an interest in providing a forum for its residents). Neither of the parties in this dispute are Iowa corporations.

### 5. THE CONVENIENCE OF THE PARTIES

Finally, the Court considers the convenience of the parties. Amtek—an Indian corporation that maintains its headquarters in New Delhi—would likely be severely inconvenienced if it was forced to answer in a court half a world away. Iowa is an inconvenient

forum for Whitesell as well, as the corporation both operates and was incorporated outside of the State. As a result, this forum would be inconvenient for both parties. Although this factor is not dispositive and is accorded less weight than others, *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390 (8th Cir. 1991), the Court concludes that, overall, this factor weighs against the Court's exercise of personal jurisdiction in this case.

### B. PERSONAL JURISDICTION THROUGH ALTER EGO THEORY

Whitesell also argues that jurisdiction can be exercised over Amtek on the basis of an alter ego theory. This Court disagrees. Mere ownership, even whole ownership, of a subsidiary in a forum state, does not ordinarily render the foreign parent corporation subject to jurisdiction in that forum state. *Cannon Mfg. Co. v. Cudahy Packing*, 267 U.S. 333, 336 (1925). However, a court can find personal jurisdiction over a defendant if it determines that the forum subsidiary company was a mere alter ego of the foreign parent corporation. *Lakota Girl Scout Council, Inc. v. Harvey Fund-Raising Mgmt. Inc.*, 519 F.2d 634, 638 (8th Cir. 1975). "Personal jurisdiction can be properly asserted over a corporation if another is acting as its alter ego, even if that alter ego is another corporation." *Epps*, 327 F.3d at 649.

The finding that a resident subsidiary is the alter ego of a nonresident corporate entity "is contingent on the ability of the plaintiff to pierce the corporate veil." *Id*. The Court applies the law of the state of Iowa to determine if it is appropriate to pierce the corporate veil in this case. *Lakota*, 519 F.2d at 638. The Eighth Circuit has held that, under Iowa law, a parent corporation is presumed to be separate from a subsidiary corporation—and therefore not liable for its actions—unless:

> (1) the corporation is undercapitalized, (2) without separate books, (3) its finances are not kept separate from individual finances, individual obligations are paid by the corporation, (4) the corporation is used to promote fraud or illegality, (5) corporate formalities are not followed, or (5) the corporation is merely a sham.

*Lakota*, 519 F.2d at 638. These factors determine whether or not the corporate veil should be pierced under Iowa law. *Id*.

Applying these factors, the Court finds that Amtek's mere ownership of Midwest is insufficient to satisfy the alter ego test. Whitesell contends that Amtek employees controlled Midwest's financial decisions, that Amtek commingled its finances with Midwest, and did so with the aim of promoting fraud, injustice, or other illegal activities. It is one thing to allege this

10

activity. It is quite another to allege facts that give rise to a plausible claim. There is no indication that the pleadings support any of these claims. Whitesell is required to state sufficient facts that would "support a reasonable inference" that Amtek "may be subjected to jurisdiction" in Iowa. *Steinbuch*, 518 F.3d at 585. Whitesell only supports its claims emails sent by Midwest employees to employees of one of Amtek's other subsidiaries. A degree of control and domination greater than that suggested in this case is required to support a finding that a parent corporation and its subsidiary are alter egos of one another. *See Viastystems*, 646 F.3d at 596.

In limited circumstances, the Eighth Circuit has recognized jurisdiction over parent corporations where the parent corporation so controls and dominates the activity of its resident subsidiary that a finding of jurisdiction would satisfy due process. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 596–97 (8th Cir. 2011); *Anderson v. Dassault Aviation*, 361 F.3d 449, 454 (8th Cir. 2004). "Long arm derivative jurisdiction has been found, however, where the parent so controlled and dominated the activities of its resident subsidiary that the latter's separate corporate existence was in effect disregarded." *Bielicki v. Empire Stevedoring Co., Ltd.*, 741 F. Supp. 758, 761 (D. Minn. 1990) (citing *Lakota Girl Scout Council, Inc.*, 519 F.2d at 637). "No all embracing rule has been laid down under which the relationship between two corporations may be determined. The circumstances in each case must be examined to determine whether a corporation through the activities of another corporation has subjected itself to jurisdiction in a state under its long arm statute." *Fisher v. First Nat. Bank of Omaha*, 338 F. Supp. 525, 529 (S.D. Iowa 1972) (citations omitted).

The allegations, affidavits, and exhibits presented in Whitesell's pleadings do not illustrate the type of synergistic relationship and control required to satisfy due process. Whitesell has offered no affidavits or specific allegations regarding Amtek's involvement in Midwest's day-to-day operations. Whitesell has not suggested that any Amtek officials have ever visited Iowa. Midwest was not a distributer of Amtek's goods, and there is no suggestion in the pleadings that Amtek experienced any kind of benefit from an exclusive relationship with Midwest. Whitesell is unable to meet its prima facie burden of jurisdiction through an alter ego theory. Consequently, this Court finds that Amtek is not subject to the jurisdiction of this Court.

### C. REQUEST FOR JURISDICTIONAL DISCOVERY

Whitesell also requests that the Court grant the Plaintiff leave to conduct jurisdictional discovery, the Court denies this request. Jurisdictional discovery is appropriate where the plaintiff offers "documentary evidence, and not merely speculations or conclusory allegations." *Steibuch*, 518 F.3d at 589. "When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004). Whitesell has offered only conclusory allegations that Amtek has engaged in any business in Iowa. As a result, the Court denies Whitesell's request for jurisdictional discovery.

### V. CONCLUSION

Whitesell has failed to allege facts that meet the criteria required for this Court to exercise specific or general personal jurisdiction over Amtek. Moreover, none of the factors the Eighth Circuit considers when conducting a personal-jurisdiction inquiry suggest that Whitesell had sufficient minimum contact with the forum state—in fact, they all militate against a finding of personal jurisdiction in this case. Accordingly, Whitesell has not satisfied its burden to establish a prima facie case permitting this Court to exercise jurisdiction over Amtek. Maintaining this suit would offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316. The Motion to Dismiss for lack of personal jurisdiction is granted.

### VI. DISPOSITION

The Court finds that at this time Defendant's Motion to Dismiss is **GRANTED**. The clerk shall enter judgment accordingly.


Upon the foregoing,
**IT IS ORDERED** that the motion to dismiss [8] is granted.
**DATED** this 19th day of February, 2014.

JOHN A. JARVEY
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF IOWA

12